# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

NANCY WADE AND JANICE RULLI
3649 Valley Road
Ellicott City, Maryland 21042,

    Plaintiffs/Class Representatives,

v.

THE CREIG NORTHROP TEAM, P.C.
12345 Wake Forest Road #F
Clarksville, Maryland 21029,

       Serve:
       Creighton E. Northrop, III
       12345 Wake Forest Road, #F
       Clarksville, Maryland 21209,

CREIGHTON E. NORTHROP, III
12345 Wake Forest Road, #F
Clarksville, Maryland 21209,

LONG & FOSTER REAL ESTATE, INC.
11351 Random Hills Road
Fairfax, Virginia 22030,

       Serve:
       The Corporation Trust, Inc.
       351 West Camden Street
       Baltimore, Maryland 21201,

CARLA J. NORTHROP
12345 Wake Forest Road, #F
Clarksville, Maryland 21209,

MARY A. CALDER-SHERROCK
10320 Little Patuxent Parkway, Suite 700
Columbia, Maryland 21044,

AND

LAKEVIEW TITLE COMPANY, INC.
10320 Little Patuxent Parkway, Suite 700
Columbia, Maryland 21044,

  Serve:
  Lindell C. Eagan
  10320 Little Patuxent Parkway
  Suite 700
  Columbia, Maryland 21044,

    Defendants.

## CLASS ACTION COMPLAINT

Plaintiffs/Class Representatives Nancy Wade and Janice Rulli, on behalf of themselves and others similarly situated, by and through their attorneys, hereby file this Class Action Complaint and allege as follows:

## I.
### Preliminary Statement

1.  Long & Foster Real Estate, Inc. actively and knowingly participated in a scheme in which Creighton E. Northrop, III ("Creig Northrop"), The Creig Northrop Team, P.C. ("The Northrop Team"), Carla J. Northrop received approximately $1.3 million in illegal kickbacks from Lakeview Title Company, Inc. ("Lakeview") from 2001 through 2014.[1]  The illegal kickbacks violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617 (1974) ("RESPA").  The Defendants accomplished and concealed this scheme through sham arrangements—(1) a sham employment arrangement from 2001 through 2007, and (2) a sham marketing agreement from 2008 through 2014.  The scheme was exposed in 2013 (though Mary

---

[1] For ease in reference, Long & Foster, Creig Northrop, Carla Northrop, and The Northrop Team will be referred to collectively as "The Long & Foster Defendants."  The same group without Long & Foster will be referred to collectively as "The Northrop Defendants."  Lakeview and Mary A. Calder will be referred to collectively as "The Lakeview Defendants."

A. Calder-Sherrock's role was just revealed in July 2014 through documents obtained via a

Public Information Act request), and a class action complaint was filed in May 2013.  This court

certified that class action, but only for class members who purchased homes during the sham

marketing agreement (2008 and later), because the named plaintiffs in that case purchased their

home in 2008.  The Plaintiffs and class members affected by the 2001-2007 sham employment

arrangement now timely file this action.

## II.
## Parties

2.      Plaintiffs/Class Representatives Nancy Wade and Janice Rulli are natural persons

and are residents of 3649 Valley Road, Ellicott City, Howard County, Maryland.

3.      Defendant The Northrop Team is a Maryland corporation.  The Northrop Team

solicits and does business with residents throughout the State of Maryland.  The Northrop

Team's principal place of business is located in Howard County, Maryland.

4.      Defendant Mr. Northrop is a natural person who is President of The Northrop

Team and a salesperson affiliated with Long & Foster, licensed with the State of Maryland,

Department of Labor, Licensing and Regulation (license #317041).  Mr. Northrop is a resident of

Howard County, Maryland and regularly transacts business in Howard County.

5.      Defendant Ms. Northrop is a natural person who is Vice President of The

Northrop Team and a salesperson affiliated with Long & Foster, licensed with the State of

Maryland, Department of Labor, Licensing and Regulation (license #530412).  Ms. Northrop is a

resident of Howard County, Maryland and regularly transacts business in Howard County.

6.     Defendant Long & Foster is a Virginia corporation registered to do business in the State of Maryland.  Long & Foster solicits and does business with residents throughout the State of Maryland and regularly transacts business in Howard County.

7.     Defendant Ms. Calder-Sherrock is a natural person who is Vice President, Chief Operating Officer, and part owner of Lakeview and an insurance producer, licensed with the State of Maryland, Maryland Insurance Administration (license # 110445).  Ms. Calder-Sherrock is a resident of Howard County, Maryland and regularly transacts business in Howard County.

### III.
### Jurisdiction and Venue

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question).

9.     Venue is proper in this District because, under 28 U.S.C. § 1391(b), a substantial part of the events giving rise to claims herein occurred within this District and the Defendants all systematically and continually transact business in this District.

### IV.
### Specific Factual Allegations for Individual and Class Relief

**A.     Long & Foster Authorized and Participated in Kickback Scheme**

10.     Long & Foster is a real estate broker, licensed under the laws of various states, including Maryland.  At all times relevant to this complaint, The Long & Foster Defendants were real estate licensees as defined under Md. Code Ann., Bus. Occupations and Professions, § 17-101(k).

11.     The Northrop Defendants are real estate salespersons or associate real estate brokers who are affiliated with and under the authority to act on behalf of their broker of record,

Long & Foster.  Md. Code Ann., Bus. Occupations and Professions, § 17-310.  The Northrop

Defendants list Long & Foster as the broker with whom they are affiliated.  In connection with

the referral of the Plaintiffs and class members to Lakeview for settlement services, the Northrop

Defendants were agents acting on behalf of Long & Foster, and such referrals were within the

scope of the Northrop Defendants' authority.

12.     Long & Foster directly supervised The Northrop Team through Ona Beares, a

salaried manager paid directly by Long & Foster and designated by Long & Foster as the Office

Branch Manager of The Northrop Team office.

13.     Ms. Beares was responsible for supervising the conduct of all salespersons and

associate brokers of The Northrop Defendants.  Ms. Beares held regular meetings with The

Northrop Defendants, reviewed contracts of sale, signed commission compensation disbursement

authorizations, and checked advertising and marketing materials to ensure compliance with

federal and state laws.

14.     At all relevant times, The Northrop Defendants prepared contracts and entered

into Buyer Brokerage Agreements and Exclusive Listing Agreements with Plaintiffs and class

members as agents for the benefit and on behalf of Long & Foster while being directly

supervised and managed by Ms. Beares, a direct employee of Long & Foster.

15.     Real Estate Brokerage Compensation under the Buyer Brokerage Agreements and

Exclusive Listing Agreements paid by the Plaintiffs and class members was paid to Long &

Foster who then paid commissions to The Northrop Defendants for the representation of

Plaintiffs and class members.

16.     At all relevant times, The Long & Foster Defendants communicated to the Plaintiffs and class members that The Northrop Defendants were agents acting on behalf, and for the benefit, of Long & Foster.

17.     At all relevant times, The Northrop Defendants were under a contractual agency relationship with Long & Foster to act on behalf of Long & Forster as the agents of Long & Foster in their dealings with Plaintiffs and class members under the supervision of Ms. Beares.

18.     As part of its services provided to every client, Long & Foster refers every client to a title company for settlement services.  Long & Foster authorized each of its agents, including The Northrop Defendants, to make these referrals on Long & Foster's behalf.  Long & Foster actively participated in the kickback scheme detailed more fully below by Ms. Beares' instructing and requiring members of The Northrop Team to refer clients to Lakeview for settlement services.  Ms. Beares admonished and disciplined members of The Northrop Team who referred clients to title companies other than Lakeview.  Long & Foster, through Ms. Beares and otherwise, knew that The Northrop Defendants were receiving illegal kickbacks from Lakeview in exchange for the referrals.  Among other reasons, Long & Foster facilitated and permitted the kickbacks because Mr. Northrop was, and remains, Long & Foster's top producer and relies on Mr. Northrop's national recognition to help Long & Foster's overall business.

**B.     <u>Sham Employment Arrangement</u>**

19.     On or about August 29, 2001, Creig and Carla Northrop met in person with Lakeview executives Mary Calder-Sherrock, James K. Eagan, III, and Judith A. Brewer at Lakeview's offices and devised an illegal kickback scheme.  The illicit agreement reached at the meeting was memorialized in a letter the following day, which provided that Ms. Northrop

would be paid as an "independent representative, setting [her] own hours and schedule" and would be entitled to the staggering amount of "one-half (1/2) of the title insurance premium received by Lakeview" for "business generated from any member of the Northrop Team." Thereafter, the Defendants put the scheme in place, and the Lakeview Defendants paid The Northrop Defendants a total of approximately $775,000 via Carla Northrop's sham employment arrangement through 2007.  In 2008, the Defendants began funneling the illegal kickbacks through a sham marketing agreement.

20.     At the time of the August 29, 2001 meeting, Ms. Northrop was a real estate licensee and a full-time employee and vice president of The Northrop Team.  To be sure, Ms. Northrop did not perform any actual work or services for Lakeview.  Remarkably, she did not actually appear for work or maintain set hours, nor did she process or conduct any real estate closings or process any real estate files for Lakeview.  Indeed, Lakeview did not provide Ms. Northrop with an office, a telephone number (including cell), business cards, or even an email address.  Ms. Calder-Sherrock negotiated the sham employment arrangement on behalf of Lakeview, and Mr. Northrop negotiated the sham arrangement on behalf of the Northrop Defendants.  Ms. Calder-Sherrock facilitated the illicit payments during the course of the arrangement.

21.     The Defendants intentionally concealed Ms. Northrop's supposed employment at Lakeview from the public by not disclosing to Plaintiffs or class members that she was a supposed employee of Lakeview receiving compensation while simultaneously holding her out to Plaintiffs and class members as the Vice President of The Northrop Team.

7

22.     Ms. Northrop began working for The Northrop Team in 2000, but The Northrop Team's own website did not identify Ms. Northrop as an employee at Lakeview.  Instead, The Northrop Team's website referred only to Ms. Northrop's being formerly employed at another title company.  Moreover, in Ms. Northrop's advertising biography on The Northrop Team website in 2006, she declared she only had 3 years of title experience.  This is remarkable because she was disclosing only the 3 years she supposedly worked at another title company, but makes no mention of the additional 6 years of purported title experience at Lakeview.  In the packet The Northrop Team gave to all of its new clients, including Plaintiffs and class members, Ms. Northrop's employment with Lakeview is not referenced. Similarly, the Lakeview website, which provided a listing and biographies of its employees, did not list Ms. Northrop as an employee, which further concealed the illicit arrangement.  Other members of The Northrop Team and true employees of Lakeview (i.e., other than those who negotiated and paid the illegal referrals like Ms. Calder-Sherrock) were unaware of Ms. Northrop's purported employment with Lakeview.  Ms. Northrop's supposed employment at Lakeview was never disclosed to Plaintiffs or any of the class members.

23.     The compensation relationship between Lakeview and the Northrop Defendants was never disclosed to, and actively concealed from, The Northrop Defendants' clients, including the Plaintiffs and class members.   In each transaction, Defendants presented Affiliated Business Disclosures ("ABA Disclosures") prepared by The Long & Foster Defendants to the class members that purported to disclose all business relationships Long & Foster and its affiliates, including The Northrop Defendants, had with other companies potentially involved in the transactions, including title companies.  At the bottom of the ABA

Disclosure, The Northrop Team clients signed an acknowledgement, which included the

following language:

> This is to give you notice that Long & Foster Real Estate, Inc.
> ("Long & Foster") has business relationships (e.g., direct or
> indirect ownership interests, joint ventures and/or contractual
> relationships including marketing agreements and/or office leases)
> with the following mortgage, title, closing, and insurance service
> providers . . . As a result of these relationships referrals to any of
> the above-listed entities they may provide Long & Foster (and/or
> any of its subsidiaries or affiliates) with a financial or other benefit.

Included in the Disclosure were several title companies—but not Lakeview.  The Defendants

never disclosed that Ms. Northrop was receiving compensation from the Lakeview.  The

Plaintiffs and class members had no reason to doubt the ABA Disclosure.

    24.    Moreover, each Defendant took further acts to conceal the illicit arrangement in

the state court case in which the scheme was ultimately revealed, *Larocca, et. al., v. Northrop, et.

al.*, in the Howard County Circuit Court, Case Number 13-C-11-089075, ("*Larocca* Case").  In

the *Larocca* Case, the plaintiffs in that matter sought information pertaining to any compensation

paid by Lakeview to any of the other defendants, including The Long & Foster Defendants in

this case.  The Long & Foster Defendants took action to conceal the sham employment scheme

by moving for a Protective Order to prevent discovery of its sham nature.  The motion in support

of the Protective Order falsely stated that Ms. Northrop's supposed employment relationship

with Lakeview began prior to her employment with the Northrop Team and that Ms. Northrop's

relationship with Lakeview "involved work unrelated to the Northrop Team."  Further, The Long

& Foster Defendants based the Motion for a Protective Order on a materially false and

misleading affidavit signed under oath by Ms. Northrop and known to be untrue by every

Defendant.  In the affidavit, Ms. Northrop provided the following materially false and misleading information:

- that she "had an employment relationship with Lakeview … prior to her employment relationship with [The Northrop Team]," when in fact it was later revealed that she was already working for The Northrop Team when she and Creig Northrop negotiated the sham employment with the Lakeview Defendants on August 29, 2001;

- that she "considered [her] compensation from Lakeview Title to be independent of [her] relationship with The Creig Northrop Team," when in fact it was later revealed that Creig Northrop negotiated her sham employment agreement at the August 29, 2001 meeting; and

- that she "had no direct involvement with any of the real estate purchases" at issue in the *Larocca* Case, when it was later revealed that she received specific kickbacks from the Lakeview Defendants for exactly those transactions via the sham employment arrangement.

25.     The Circuit Court was unaware of the false and misleading representations made by the Long & Foster Defendants, and the Circuit Court granted the Protective Order. Ultimately, the illicit nature of the supposed employment was revealed in a subsequent deposition in 2013, during which Ms. Northrop admitted facts that showed the employment was a sham.  Moreover, documents produced to the Plaintiffs in July 2014 pursuant to a Public Information Act request more specifically confirm the false and misleading representations made

to the Circuit Court in the motion and affidavit by the Long & Foster Defendants to actively

conceal the illegal kickbacks.

26.     Despite exercising reasonable diligence, the Plaintiffs and class members did not

learn of the illegal kickbacks until on or about March 2013, at the earliest, when undersigned

counsel began soliciting potential clients through the mail based on the revelation of this illicit

arrangement in a state court lawsuit.  Any running of the limitations against the Plaintiffs and

class members in this suit was tolled when the original class action was filed in May 2013.  Thus,

the Plaintiffs and class members have timely brought this action.

## C.     Injury to Plaintiffs and Class Members

27.     As a direct and proximate cause of the actions of the Defendants, the

Plaintiffs/Class Representatives and class members were deprived of impartial and fair

competition between settlement service providers in violation of RESPA.

## V.
## Facts Concerning Plaintiffs/Class Representatives

28.     The identical uniform fact pattern described in paragraphs 1 through 27 transpired

for the Plaintiffs, and additional detail is provided as follows:

29.     In or about February 2003, Plaintiffs engaged the Defendants to represent them in

the purchase of a 3649 Valley Road, Ellicott City, Maryland.

30.     Defendants referred and directed Plaintiffs to use Lakeview for their title and

settlement services in or around April 2003.  On the basis of this recommendation, Plaintiffs

used Lakeview for the title and settlement services for the purchase of their new home.  Plaintiffs

closed on the purchase of their new home in or about April 2003 at Lakeview offices in

Columbia, Maryland.  At no time during the course of the transaction and referral to Lakeview

did Defendants disclose to Plaintiffs that the Defendants were receiving a financial benefit from the referral or that Ms. Northrop was a supposed employee of Lakeview.

31.     The Plaintiffs acted with reasonable diligence in their real estate transaction and were at all times unaware of the sham employment arrangement and illicit financial scheme.  The Plaintiffs only learned of the sham employment agreement and illicit payments from Lakeview to the Defendants on or about February 28, 2014, when they received correspondence from undersigned counsel concerning allegations of illegal kickbacks.

## VI.
## Class Action Allegations

32.     The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.     Class definition: The Plaintiffs and class members are Maryland residents who retained Long & Foster and The Northrop Team to represent them in the purchase of residential real property and settled the purchase transaction at Lakeview between August 29, 2001 and December 31, 2007.

34.     The Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

35.     The questions of law and fact in this action are uniquely common to all members of the Class.

36.     There are questions of law and fact which are not only common to the Class, but which predominate over any questions affecting only individual Class members.  The predominating questions include, but are not limited to, the following:

a)      Whether the Defendants received unearned fees and illegal referral fees or kickbacks for the referral of business to Lakeview;

b)      Whether Ms. Northrop was a *bona fide* employee of Lakeview;

d)      Whether the Defendants made partial and incomplete disclosures concerning their business relationship relevant to the class members' transactions by omitting their financial relationship with Lakeview;

e)      Whether payments to The Northrop Defendants violated RESPA;

f)      Whether the Plaintiffs and the Class are entitled to treble damages under RESPA;

i)      Whether the Plaintiffs and the Class are entitled to attorneys' fees under RESPA.

37.     The claims of the Plaintiffs are typical of the claims or defenses of the respective class members.

38.     The Plaintiffs/Class Representatives will fairly and adequately protect the interests of the Class.  The interests of the named Plaintiffs and of all other members of the Class are identical and the named Plaintiffs are cognizant of their duties and responsibilities to the Class.  Plaintiffs' Counsel has combined substantial experience in class action proceedings and complex fraud and real estate litigation and will adequately represent the Class's interests.

39.     The Class consists, upon information and belief, of approximately 1500 to 2200 individuals and are thus so numerous that joinder of all members is plainly impracticable.

40.     This action should proceed as a class action under F.R.C.P. 23(b)(1) because separate actions by individual members of the class would create a risk of inconsistent or varying

adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the Defendants.

41.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(3) in that questions of law or fact common to the class members predominate over any questions affecting only individual Plaintiffs, and class action treatment is superior to other available methods for the fair and efficient adjudication of this controversy between the Class and the Defendants.

42.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but, if he does, he may exclude himself from the Class upon the receipt of notice under Fed. R. Civ. P. 23(c).

43.     This class action can be managed without undue difficulty because the Plaintiffs/Class Representatives will vigorously pursue the interests of the Class by virtue of, and as evidenced by, their actions in initiating these proceedings.

## VII.
## Cause of Action

### COUNT I
### Violation of the Real Estate Settlement Procedures Act
(All Defendants)

44.     Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     Defendants participated in a concealed scheme to generate unearned fees, kickbacks, and things of value through a sham employment arrangement in violation of RESPA and in violation of Title 24 C.F.R. Section 3500.14 *et seq.*

46.     Lakeview paid Ms. Northrop compensation under a sham employment

14

arrangement while in fact Ms. Northrop was employed full time by The Northrop Team as a licensed real estate agent affiliated with Long & Foster.  Ms. Northrop did not actually provide any material work or services for Lakeview which was reasonably related to her compensation. Ms. Northrop was not a *bona fide* employee of Lakeview, as she had no office, no phone, no business cards, no email address, and she had no *bona fide* job duties, despite receiving compensation from Lakeview.

47.     Compensation paid to Ms. Northrop by Lakeview did not qualify as a "*bona fide* salary," as there were no services actually performed that would be consistent with the provisions of 24 C.F.R. 3500.14(g)(1)(iv) and 12 U.S.C. § 2607(c)(2).  In addition, Ms. Northrop was a sham employee of Lakeview for purposes of 24 C.F.R. 3500.14(g)(1)(vii) and therefore could not receive compensation for referrals.  The employment arrangement was not disclosed to Plaintiffs and class members and the Defendants actively concealed Ms. Northrop's supposed employment at Lakeview. The Defendants instituted the sham employment arrangement for the sole purpose of disguising the compensation Lakeview paid to the Defendants for referrals of Plaintiffs' and class members' real estate settlements.   Ms. Northrop's compensation thus results in a prohibited kickback, fee or thing of value as provided for in Section 2607 (a) of RESPA.

48.     Defendants concealed the existence of financial compensation paid by Lakeview to the Defendants from Plaintiffs and class members.  In every transaction and at every settlement, Long & Foster and Lakeview presented an ABA Disclosure prepared by the Long & Foster Defendants that purported to disclose all companies that Long & Foster had a financial relationship with, but Lakeview was deliberately omitted from the disclosure. Acting with diligence, Plaintiffs and class members could not have discovered the illicit scheme as the

collective Defendants acted to conceal its truth.  To further conceal the truth, the Realtor Defendants, with the aid and support of Lakeview, prepared and filed a false affidavit signed under oath by Ms. Northrop in support of a Motion for Protective Order in the *Larocca* Case to conceal the sham nature of the employment.

49.     As a direct and proximate cause of the Defendants' actions, the Plaintiffs and class members were deprived of impartial and fair competition in violation of Section 2607 of RESPA and 24 C.F.R. 3500.14.

**VIII.**
**Prayer for Relief**

WHEREFORE:

A.     The Plaintiffs respectfully request this Court certify this case as a class action pursuant to F.R.C.P. 23(b)(1) and/or (3);

B.     Demand judgment for the Plaintiffs and class members against the Defendants and award to the Plaintiffs and class members an amount equal to:

(1)     Compensatory Damages totaling $11,200,000.00;

(2)     Three times the actual damages awarded;

(3)     Treble damages for settlement services charged, including, but not limited to, title insurance premiums, pursuant to 12 U.S.C. §2607(d)(2);

(4)     Reasonable attorneys' fees;

(5)     Costs;

(6)     Pre-judgment interest; and

(7)     Such other and further relief as in law and justice they may be entitled to receive.

16

## IX.
## Jury Demand

A trial by jury in the within action is hereby demanded on all issues.

Respectfully submitted,

_____/s/  Gregory T. Lawrence_____
Gregory T. Lawrence (Fed. Bar # 25670)
Eric D. Massof (Fed. Bar # 29002)
Hannah Kon (Fed. Bar # 29280)
Conti Fenn & Lawrence LLC
36 South Charles Street, Suite 2501
Baltimore, Maryland 21201
Phone (410) 837-6999
Facsimile (410) 510-1647
greg@lawcfl.com
eric@lawcfl.com
Hannah@lawcfl.com
www.lawcfl.com

_____/s/  G. Russell Donaldson_____
G. Russell Donaldson (Fed. Bar # 29796)
Rachael E. Breen (Fed. Bar # 18785)
The Law Offices of G. Russell Donaldson, PC
2200 Defense Highway
Suite 309
Crofton, Maryland 21114
Phone (410) 451-7100
Facsimile (410) 451-7238
law@grdonaldson.com

*Attorneys for Plaintiffs*